And I believe from reading her opinion, although she formally recited Rule 12, she really applied a summary judgment standard. And that was probably the most basic error. Under Rule 12, of course, the only thing we have to show is to follow Rule 8, which is to make a plain and simple statement of a claim showing we're entitled to relief. Our complaint makes a plain, short, simple statement showing we're entitled to relief because it alleges that Mr. Washington was fired from his job as the county administrator because he had reported illegal activity, and we allege that reporting illegal activity was not a part of the ordinary job duties of a county administrator. So it stated a short, plain, simple claim for relief. It goes into some more detail because it alleges why he thought it was illegal, because they used a phantom bidder, that is, somebody that didn't even make trucks was used as a bidder. They eliminated qualified bidders without going through the statutory procedure where you had to have a written amendment. And so he alleged a claim for relief. In order to find that he did not, Judge Brown would have had to have just imagined some facts as to how he was acting in the course of his employment or pursuant to his job duties because there's no way to take the complaint and say that. So the complaint stated a claim for relief. Your Honor, judging from the brief, I think the defense counsel believes, apparently, that the Iqbal line of authority somehow affects this case. Iqbal Twombly is simply that a complaint has to be plausible, has to be believable, plausible. Most of your Honors are not old enough to remember, but I am, when we had Operation Pretense in Mississippi. But supervisors, you know, corruption by supervisors dealing with bids is a well-established tradition in Mississippi. And making an allegation that there's been such manipulation going on is a plausible claim. The only, the United States Supreme Court, I know everybody's worried about Iqbal, but there's nothing implausible about this pleading. But the United States Supreme Court, I can't remember the date, a long time ago, in the Leatherman case, reversed this court and said that there's no such thing as heightened pleading just because we got a 1983 case against municipal defendants. We don't have heightened pleading. We don't have to make any detailed, complex statement of the facts. We're not back at common law pleading. We just have a plain and simple statement. And the most recent United States Supreme Court case, the Johnson v. City of Shelby, cited Leatherman with approval. Another case where the Supreme Court reversed this case, this court for too high, you know, compliance. Was that your case? Thank you, Your Honor, it was my case. But the, and the only deficiency in Johnson was the failure to state Section 1983, right? You are so right, Your Honor. And they didn't, they didn't have to, you know, they just observed. I mean, they just made the observation, I understand it's dictum, but they still approved Leatherman and said that's the standard for federal pleading. Leatherman, we go by a plain and simple statement and they quoted Leatherman with approval. Maybe if you were a little less plain and simple in many of these cases because I had one with you too. I'm sorry, ma'am? I had one with you about the Pregnancy Discrimination Act, didn't I? You know, I don't remember. I'm sure you did if Your Honor said so. Maybe it was someone in your office. It might have been my nephew, Your Honor. I don't think that was me. Okay. I think I know the case you're about and that was my nephew's case. I don't know. Maybe that was it. Well, Your Honor, so all I'm saying is we made a short and plain statement. In the court below, they don't seem to be arguing this now, and I'm not really clear. There's some allusion to it. They don't seem to really be arguing it, but in the court below, they attached to their answer, Your Honor, a bunch of COVID regulations basically saying that, you know, we can take extraordinary measures during COVID. And Judge Brown didn't cite that or pay any attention to it, and we think rightfully so because those, you know, whatever they attached to their answer. Judge Jones, you just last week wrote that in-bank decision. It's a First Amendment case, the city of Laredo case, and you talked in footnote two about when you can consider extraneous stuff that's not attached to the complaint. And in footnote two, you just quoted numerous Fifth Circuit cases that I think the most of them are cited in my brief to consider it as to be referred to in the complaint, central to the complaint, and consistent with the complaint basically. So those regulations or whatever don't have anything to do with it. The only thing we look to is the complaint. I don't—the complaint alleges sufficient facts. I mean, once the facts of this case are developed, we could very well show that all that is just a subterfuge, that they never intended to claim they could get around the bid laws by going through some COVID emergency or something because they advertised for bids. The notice—I'm sorry, Your Honor. How quickly was he fired after he reported this to the county clerk? He reported to the circuit clerk on a Friday and was fired the following Monday. They went into executive session. Your Honor, ironically, counsel candidly cites a statute, and I appreciate they're doing it, that I was not aware of but I think that's helpful to us. In 1917-1, it makes not the county administrator but the chancery clerk the auditor of the county. So logically—I mean, logically, if reporting illegal activities with anybody's job duty, it would be the elected chancery clerk under 1917-1. It's certainly not—there's certainly nothing to indicate that talking to the circuit clerk about illegal activity is within the chancery—I'm sorry, is within the administrator's ordinary job duties. Counsel, you still have to show, don't you, that your client was speaking as a citizen, right? That's the first part of the whole standard. Yes, sir. And so what's your best argument, that he was speaking as a citizen and not as a public employee? Well, my best argument is that's what the complaint says. My second best argument is the United States Supreme Court in the Kennedy case, which is on such close facts—the Kennedy case, Your Honor, I almost can't emphasize that enough. The Kennedy case was a case based only partly on the freedom of religion but also on the First Amendment free speech provision where the defendants claimed, well, it's a coach's job to influence students. That's exactly within his job duties. And the United States Supreme Court said it has to be pursuant to those job duties. They've got to be carrying out some act that the employer wants carried out. They've got to be pursuant to the job duties. In this case, the Board of Supervisors doesn't want it reported that they're engaging in illegal activity. It's not pursuant to their job duties. And we believe that the Kennedy case, Your Honor, is directly controlling and is our best case, together with fundamental rules of pleading. All we've got to say is a short and plain statement. It's not for the judge on a motion to dismiss to decide what the facts are and to decide that he was somehow carrying out an official job duty. It's just not within her purview at that point. Your Honor, there's another point. To me, it was such a fundamental error, I mean, to decide this case on a motion to dismiss. But there's something equally fundamental. She has some language in there about this might not be an official decision because you have a technically plead and a policy acting pursuant to a policy or use some official language or something like that. This is the Board of Supervisors, the governing body. If they make the decision, it's an official policy decision of the county. That seems like a point well taken. Well, thank you, Your Honor. I would just ask the court to, sometimes it just seems like we've gotten away from just the fundamental rules of civil procedure. All we've got to do is a short and plain statement, summary judgment. And if not summary judgment, then the trial determines the facts. But we don't determine the facts at this stage. Here's a practical thing, Your Honor. I hope I'm not out of line by suggesting this. I just saw Judge Aycock in a trial last week. And she said this is the first civil trial I've had in three years. We're not under any emergency here that we've got to bump cases because our docket's overflowing. That's not the situation. A case, you know, if I'm not a good enough lawyer to put in there a dot every I, a cross every T like counsel says I should have, then the case shouldn't be dismissed for that reason. We've pled enough plausible things to indicate that this administrator was fired in violation of his First Amendment rights. The facts should have been explored and we should have been able to find out whether that's true or not. And it's not any hardship on the federal courts in the Northern District of Mississippi to do that. So, Your Honor, we move a court to reverse this case and direct further procedures. Okay. Thank you. Ms. Lee. May it please the Court. My name is Jamie Lee. I'm here on behalf of Sunflower County in this case. I'll begin by saying if counsel's best case is Kennedy, then we should win. Because Kennedy was about prayer by a coach on a field following a ball game. It has nothing to do with the case that's before us today. Yeah, so he has a right to conduct a prayer, which is sort of at the very limit of what his job duties may be. And Mr. Washington has no right to report what he considers to be illegal conduct, right? It seems paradoxical. Well, Your Honor, using your words from your dissent in Valdez, Mr. Washington's report to the chancery clerk was part and parcel and pursuant to his official duties. What was pled by Mr. Wade in his short and plain complaint were several important things. Number one, this is a county administrator. He is statutorily charged with seeing that all board orders are carried out effectively. He is statutorily charged with keeping the board informed as to the laws that affect those same board orders. And what he did was, and he pleads it, he went to the board clerk, the chancery clerk, and Mr. Wade has interchangeably used chancery versus circuit, but it's an important point. This is the chancery clerk. She is the left hand of the board of supervisors. If Mr. Washington is the right hand, he went to the board clerk and his allegation is he said he thought that they made an illegal purchase of a garbage truck in the time of COVID during a time in which Sunflower County couldn't effectively pick up its trash under its current under its current contract. Those are his allegations. These are not my words. They are the words that are in his complaint. And we believe and we think the case law supports the fact that he did not speak as a private citizen in making these comments, if you believe his, and we must believe they're true, to the board clerk. The clerk of the board and the county administrator were having a conversation about the bid procedure. In counties all across the state of Mississippi today, it's board meeting day, they're having conversations about bid procedures. It's what they do. And this conversation was had as a part and parcel of his job duties. As the court knows, Garcetti is still very good law and its progeny have set forth a series of factors you look at to determine how this speech puts the person in either the public, in the employee context, or the private citizen. You look at who, what, when, where, and why. Here, the speech was made, and there is no argument to the contrary, to the chancery clerk, who is a fellow board employee. It was made about a topic which this county administrator was statutorily charged to oversee, the bid process. And the common understanding, the practical implication, is that this, if not Mr. Washington, then who else was going to raise an issue about this particular bid process? We look at what are the duties . . . J.D.A. I'm sorry, Your Honor. I was popping off. The district attorney, was that your comment, Your Honor? Well, I'll address that because it's, while the district court judge did not get into the legality of this situation, we certainly can for purposes . . . Well, I don't think it's before us on this motion to dismiss. Well, I agree, Your Honor. The district court didn't have to go there because the job duties were set forth specifically by Mr. Wade in his complaint. And, she used those job duties to take a look at what was alleged, about what was said, to make a motion for judgment on the pleadings decision, which should be affirmed. We believe our best case is Garcetti, and several of the cases that have come before it. But, Garcetti involved a similar issue in which an attorney who worked for the district attorney's office was concerned that there was an affidavit that was problematic and made the case that they should not pursue an investigation and a charge against a criminal defendant. He circulated a memo. He told his coworkers about it. And, the court found that he was not entitled to First Amendment protection. That, if you take the complaint as true, what Mr. Washington did here was made a complaint or a comment about the bid process, which he, by statute, was supposed to oversee. And, he's afforded no First Amendment protection, just like the attorney was afforded no First Amendment protection in Garcetti. The case that is cited by Mr. Washington, the Valdez case, which Your Honor wrote the dissenting opinion on, only highlights further that we can look to the statutory duties of an employee when trying to decide if they were talking in pursuant to their official duties or in some other context. The Valdez case only highlights that for the court. We would argue that, of course, under Garcetti, the who, what, when, where, and why all play in favor of Mr. Washington speaking as an official and not as a private citizen. Again, this is a motion for judgment on the pleadings, and Mr. Wade has pointed out that many of the other cases are motion for summary judgment cases. But here, unlike other cases, we have the statutory language to guide the court and to tell the court what those job duties are. We also have the issue of causation in this case. The court stated earlier that the point was well taken about the board decision being one that could be seen under Monell as a policy decision. We don't disagree, but here the problem is Mr. Wade has failed to plead a fact which shows there was a causal connection between this alleged comment that was made and- Well, the fact that it's less than 72 hours is interesting. Well, you- I mean, we can, for pleading purposes, one can infer connections. Your Honor, that may be true, but he doesn't even allege in the complaint that there was a communication between the chancery clerk and the board of supervisors. That's not in the complaint. That's not what, I mean, I don't, did the district court rule on causation or did she rule on no municipal liability? She made the ruling that there was no Monell liability and said there was not a custom practice policy which was- Right. Well, that's different from causation. I understand, Your Honor. Our point only was that there's no allegation it was the moving force. But the better argument and what the district court held her hat on, hung her hat on rather, was this issue of Mr. Washington speaking in his employment capacity. And I noted that in the argument before this court, there was no comment by counsel opposite about what exactly the duties were. He wants to talk about illegality of this alleged bidding issue, which we would argue vehemently that it was not illegal. We had three different orders that were directing the board that they can conduct the bidding process as they did in an emergency situation. However, again, he's speaking to the chancery clerk within the confines of the courthouse about something he was duty bound to talk about. That's it. Under Garcetti, and in the court's own words, Judge Jones, your own words, there have been attempts to muddy the waters of Garcetti over and over again. But you get back to the idea of if you're speaking pursuant to your official duties, it is not First Amendment protected speech. End of story. And that's what we have here, Your Honor. For those reasons, we would respectfully ask that the district court's judgment on the pleadings order be affirmed. Okay. Thank you very much. Thank you, Your Honor. Mr. Wade, rebuttal. Your Honor, I think the problem with counsel's argument is it's been totally discredited by Kennedy as to what pursuant to official duties means. She thinks it means pursuant to official duties means it might have something to do with your job. Pursuant to official duties, according to Kennedy, means that you are carrying out the government's speech. You're doing out something that the government authorized you to do. You're doing that type of speech. You're not doing just the opposite of what the government wanted you to do. In this case, it's just exactly like Kennedy. The coach was doing just exactly the opposite of what the school board wanted him to do. He was praying, and he was also giving talks to the students. They didn't want him doing that because they thought it violated the establishment clause, and they didn't want him to do it. They said it cannot be pursuant to his official duties because he's not carrying out the government line. He's not carrying out the government message. In this case, the administrator is not carrying out the board of supervisors' message. He's taking the opposite view that this is illegal. When she says they were discussing the bid process, well, where does she get that? Just right out of thin air? That's not anything in the complaint that they were having a discussion about the bids. There's nothing in the official job duties that says that the county administrator has anything to do with the bids. In fact, if you look at the notice of a claim attached to my complaint, which is now part of the complaint, they hired a third-party contractor to do this bidding process. So it's not pursuant to his official job duties. And this case is very distinguishable from Garcetti, Your Honor. In fact, Garcetti involves this narrow situation. We have an assistant district attorney who, instead of doing his job and advocating for the state, advocates in his memorandum that the case should be dismissed because the search warrant, the search was deficient, didn't comply with the Fourth Amendment, or had misdescription to something. He was acting contrary. He wasn't carrying out his, I'm sorry, he was carrying out his official job duties. He was writing a memorandum that he was required to write, and he was taking and he was exercising speech that he was required to speak pursuant to his official job duties. In this case, he is not required by any official job duties to say that what the supervisors are doing is illegal. We don't know whether he was talking about the rain or the ball game or what they were talking about. You know, that's not before the court at this point. We just know that he told the circuit, I'm sorry, the chancery clerk she's right to get, when she gets to be made, she'll get her words mixed up too. When he was, he was, he was, we don't know what they were talking about, but in the context of it, he said, I think this is illegal. What they're doing is illegal. This is beard rigging. And so that's the context we're in. And that wasn't carrying out any governmental message, Your Honor. And it was not pursuant, there's no basis for which the court could find just based on a motion to dismiss that this was pursuant to his official job duties. All right. We have your argument. Thank you. Thank you, Your Honor. We'll stand in recess for about 10 minutes.